Victoria Vaquer Velázquez et al., Appellants, v. Registrar of Property of Guayama, Respondent.

No. 1102. Submitted June 22, 1942.—Decided July 21, 1942.

*C. Domínguez Rubio* for appellants. The registrar appeared by brief.

Mr. Chief Justice Del Toro delivered the opinion of the court.

In Guayama, on October 12, 1935, before Notary Public Celestino Domínguez Rubio the persons named below appeared and executed the contracts whose particulars, in so far as now pertinent, we will state presently:

Juana Rodríguez, married a second time, for herself and on behalf of her minor children born out of her first marriage with Jaime Vaquer, named Pedro, Bernardo, Isabel, Antonio, and Juana Vaquer y Rodríguez;

Antonio Vaquer, for himself and as attorney in fact of Victoria Vaquer Velázquez, married and resident of Chile;

The sisters Dilta, Hilia, Betina, Josefa, and Juana Lamboglia y Pérez; and

Pedro Pérez, in his capacity as guardian of José Lamboglia y Pérez, a minor.

They stated that the minors Vaquer Rodríguez, Victoria Vaquer Velázquez, and Juana Rodríguez, were owners of 14 properties numbered from 1 to 14 which were described, all being rural properties with the exception of No. 8 which is urban. The largest is No. 1, which contains 273 acres (*cuerdas*);

That the minors Vaquer and Victoria Vaquer acquired certain properties by inheritance from their father, Jaime Vaquer and Juana Rodríguez by inheritance from her daughter, Celia Vaquer;

That properties Nos. 2, 3, 4, 5, 6, 10, 11, 13, and 14 were encumbered by a mortgage constituted by Jaime Vaquer in favor of Angela Pérez widow of Lamboglia, and that after the carrying out of certain preliminary negotiations which were set forth and the grant of judicial authoriza-

tion which was transcribed, Juana Rodríguez for herself and on behalf of her children, the Vaquer minors, on the one hand, and Victoria Vaquer, represented by Antonio Vaquer, on the other, agreed to exchange and did exchange the undivided interests belonging to the former in property No. 1 valued at $9,249.15, for all the undivided interests held by the latter in properties Nos. 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, and 14, valued at $2,607; and the party of the second part, that is, Victoria Vaquer, constituted a mortgage for $6,880 on property No. 1 in favor of the brothers Lamboglia Pérez, heirs of Angela Pérez widow of Lamboglia.

The brothers Lamboglia Pérez, parties to the deed, in their turn canceled the mortgage on the properties of the inheritance which had been constituted by Jaime Vaquer in favor of Angela Pérez widow of Lamboglia in consideration of the new mortgage constituted by Victoria Vaquer on property No. 1, and thus Victoria Vaquer became the owner of property No. 1 encumbered by a mortgage, and Juana Rodríguez and her children, the Vaquer minors, owners of the other properties of the inheritance free from any encumbrances.

Upon the deed being presented for record in the registry of property of the district, the registrar made the entries which are described in his decision, and further stated therein:

". . . In connection with the present note, it is explained that the mortgage constituted by Doña Victoria Vaquer y Velázquez through her attorney in fact Don Antonio Vaquer y Moll in favor of the heirs of Doña Angela Pérez Fontán has been recorded at the place indicated on the margin of the description of the property marked No. 1 only as to the interest held by the mortgagor in said property and acquired by inheritance from her deceased father, Don Jaime Vaquer y Moll; and the record has been denied as to the remaining portion of said property completing the whole thereof, that is, as to the undivided interests acquired by said debtor Victoria Vaquer Velázquez by exchange from the widow and other heirs of Don Jaime Vaquer y Moll, because although said undivided interests

seem to be separate property, the fact is that in the judgment of the undersigned they are community property, as it appears from the foregoing document that the separate undivided interests in other properties which the debtor gave in exchange to the widow and heirs of don Jaime Vaquer y Moll are valued at $2,607, whereas the shares or undivided interests which the mortgage debtor acquired on that account in the above-mentioned mortgaged property have a greater value than the former, amounting to $9,249.15, and in order to compensate for the difference in said sums, the said debtor, besides binding herself to pay certain sums of money which are set forth in the said document as debts of the heirs of Jaime Vaquer y Moll, also constitutes the mortgage right involved in this decision to secure the payment of another mortgage debt contracted by the predecessor in interest of said heirs, thus binding to the fulfilment of said obligations the conjugal partnership existing between the debtor Victoria Vaquer y Velázquez and her husband Miguel Roselló whose name, although not stated in the deed of mortgage, exchange, and other particulars, appears in the ratifying document executed by his aforesaid wife before the Vice-Consul of the United States of America in the City of Santiago, Province of Santiago, Chile, which document has been exhibited without it appearing in any way that the aforesaid husband Miguel Roselló has consented to everything that has been agreed by his aforesaid wife in the said document. . . . ''

Feeling aggrieved by the above declaration which substantially affects their rights, the contracting parties, through their attorney, took the present administrative appeal, praying for a reversal of the registrar's decision.

 The divergence of opinion between the registrar and the appellants is that the appellants maintain that property No. 1 is, and should be recorded as belonging to, the separate estate of Victoria Vaquer and that, therefore, the new mortgage was properly constituted by her alone even though she was married, whereas the registrar thinks that said property belongs separately to Victoria Vaquer only as to the undivided interest therein acquired by her by inheritance from her father—he then admits that this is so also as regards the whole of her undivided interests in the other hereditary property which she exchanged for those held by

the other heirs in the said property—and that, therefore, as the property acquired was community property, it could not be validly mortgaged without the intervention of the husband.

The question is a new one in this jurisdiction. Let us see first what the applicable law provides. The whole of Title III, of Book IV of the Civil Code, 1930 ed., is devoted to the regulation of contracts relating to property on occasion of marriage, and Article Second of Chapter Fourth of said title deals with the separate property of the spouses. The first section of that Article which is §1299, equivalent to §1396 of the Spanish Civil Code, provides:

"The following is the separate property of the spouses: 1. That brought to the marriage as his or her own. 2. That acquired by either of them during the marriage by lucrative title, that is to say, by gift, legacy or descent. 3. That acquired by right of redemption or by exchange for other property belonging to one of the spouses only. 4. That bought with money belonging exclusively to the wife or to the husband."

In commenting on the above provisions, Manresa divides the separate property into two groups: (1) Property separately owned by the spouses in an immediate or direct way, and (2) separate property belonging to each of them by substitution or subrogation.

There is no doubt that in this case the undivided interest acquired by Victoria Vaquer in property No. 1 upon the partition of the estate left by her father, is comprised in the first group, and similarly as to the undivided interests which she held in the other real property belonging to the inheritance. Is the remaining portion of property No. 1 which she acquired under the contract of exchange entered into with her coheirs comprised in the second group? The answer to this question is decisive of the present appeal. Referring to the second group, Manresa says:

"During the marriage the properties brought in or acquired by the spouses are not generally kept in their original form. Some are consumed, others are exchanged or sold, others become extinguished or are substituted by compensation, and all these facts give rise to transmutations in the property of each spouse which is gradually exchanged or substituted in part by other property.

"Our code unconditionally accepts the rule of subrogation, so that, in principle, everything that is separately acquired by the husband or wife during the marriage in substitution or replacement of other property, previously belonging to them, is subrogated to the latter and is regarded as a part of their separate estate. The law requires only proof of the fact of such substitution, or that the latter be established by proper evidence. In case of doubt, it regards the property as community property (§1407)."

Referring to property acquired by exchange, he adds:

"Exchange of property for another, of jewelry, cattle (*semovientes*), etc., when the transaction must be considered as an exchange. The thing acquired is always substituted by that which is alienated, regardless of its value.

"As stated by us in our commentary on §1337, if as a result of the exchange of two properties a balance in money is received which is covered into the partnership, the partnership will be indebted for said balance to the subrogated spouse; and if, on the contrary, the partnership should have to pay any excess, the latter will be owed by the spouse to the partnership."

The commentary above referred to, in its pertinent part, reads as follows:

"*Exchange for other dowry property.*—The substitution or subrogation is here fully evident. It is only natural that if the immovable given in exchange by the wife was dowry property, the one acquired in substitution thereof should have that same character. But the exchanged properties do not always have the same value. . .

". . . If the value of the immovable acquired by the wife is less than that of the one alienated, the former is of course dowry property, and in addition the difference in value involves a contribution to the conjugal partnership for which the husband becomes responsible to the wife or her heirs, since eventually he must repay that difference in cash.

"If the value of the immovable received in exchange is greater than that of the one delivered, the conjugal partnership must pay

the difference in cash. This amount may be derived from the separate estate of the husband, from that of the wife, or from the partnership property. Should the excess in the value of the property, that is, the undivided interest represented by it belong to the source from which the money has been derived? . We think not: 1st, because §1337 indistinctly provides that, in case of an exchange, the immovable acquired shall replace the one delivered and like the latter must be deemed dowry property; second, because the law does not favor indivision and such indivision would result if the excess in the value of the property exchanged were to belong either to the husband or to the community. But, as it would not be just for the wife to enrich herself at the expense of the husband or of the partnership, and as to disregard the origin of the money would be tantamount to allow the making of gifts between the spouses during marriage, from the exchange in the given case a credit necessarily arises in favor of the person or entity furnishing the money, who is not the wife, whose claim must be taken into account at the time of the liquidation of the conjugal partnership. If the excess was paid with dowry funds, the question does not arise.''

See 9 Manresa, *Comentarios al Código Civil,* fourth edition, pp. 493, 494, and 254.

Said commentator does not specifically refer to the acquisition by exchange of an immovable having a higher value which has been mortgaged or may be mortgaged for the excess; but it should be noted that he lays emphasis upon the fact that in any event the property received retains the same character as the one which has been given in exchange therefor. To the same effect see *Cot* v. *Registrar of Property,* 15 P.R.R. 470, which is cited to support the text in 31 C. J. 28, §1109, thus:

"Property received in exchange for other property whether community or separate as a general rule acquires the character of the property for which it is exchanged.''

See also McKay on Community Property, 1910 ed., p. 147.

The properties which Victoria Vaquer exchanged for the undivided interests of her coheirs in property No. 1 consti-

tuted separate property and hence the acquisition involved should also have that character.

The difference in value of the exchanged undivided interests is not real but only apparent, since the constitution of the new mortgage did not really involve a new encumbrance but a mere transfer to a single property of the encumbrances which the predecessor in interest of the contracting parties had constituted on several properties. The value of what was acquired free from encumbrance by Victoria Vaquer in the property in question was proportionate to that of the thing which she gave in exchange to her coheirs. Upon the execution of the contract—and what is sought to be recorded in the registry is the contract—what was transferred to Victoria Vaquer was not an unencumbered property, such as the unencumbered properties which were transferred to her coheirs, but a property which was subject to a mortgage for approximately the difference between its total value and that of the separate property which she alienated under the contract of exchange.

We should not be understood as holding that if the mortgage were paid with funds belonging to the conjugal partnership, the latter would derive no right therefrom, for it would.

Just as, under §1304 of our code, any useful expenditures made for the benefit of the separate property of either one of the spouses by means of advances made by the partnership, are partnership property, if the mortgage constituted by Victoria Vaquer on her separate property—property No. 1—acquired by inheritance and by exchange for other separate property belonging to her, should be paid with funds belonging to the partnership property, the advances made should be credited to the partnership, but this fact would not change the status of the property as separate property released from the encumbrances which burdened it.

The case would be the same as if the wife had originally inherited the whole of property No. 1, not encumbered jointly with other properties, but encumbered by the whole of the mortgage constituted by her predecessor in interest, Jaime Vaquer.

For the reasons stated that part of the decision of the registrar which has been appealed from must be reversed and the exchange and mortgage involved ordered recorded in their entirety without any reservation or explanation.